**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Raymond P. Moore**

Civil Case No. 15-cv-00136-RM

KEVIN R. HERRERA,

      Applicant,

v.

JOHN FALK, Sterling Correctional, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

      Respondents.

---

## ORDER

---

    This matter is before the Court on petitioner Kevin R. Herrera's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (ECF No. 1.) Petitioner challenges his convictions on the grounds that he received ineffective assistance of appellate counsel and that prosecutorial misconduct improperly influenced the indictment returned by the grand jury. (ECF No. 1.) For the following reasons, the Court (1) DENIES petitioner's application; (2) DISMISSES the petition with prejudice; and (3) DENIES issuing a certificate of appealability.

## I.    RELEVANT BACKGROUND

    Applicant's convictions arose out of an incident that occurred in May, 1998 when, as described by the Colorado Court of Appeals,

> [petitioner] and two of his cousins (D.T. and A.S.) conspired to take revenge upon a person who had shot [petitioner's] brother. The three relatives drove up in a green Toyota RAV4 alongside a red pickup truck in which two men, one of whom was the person who had shot [petitioner's] brother, were sitting; gunshots directed at the pickup truck killed one man and seriously wounded the other (R.M.). [Petitioner] and his brother were members of one gang, and the person who shot defendant's brother was a member of a rival gang.

1

(ECF No. 10-6, *People v. Herrera*, 12CA0312 (Colo. App. May 22, 2012) (unpublished)).

Petitioner was indicted by a grand jury on September 29, 1999, on charges of first degree murder with deliberation, first degree murder with extreme indifference, conspiracy to commit first degree murder, and criminal attempt to commit first degree murder.  Petitioner pled not guilty to these counts and proceeded to trial in November, 2003. On December 11, 2003, a jury found petitioner guilty on the charges of conspiracy to commit first degree murder, being an accessory to attempted murder in the first or second degree of R.M., and being an accessory to murder in the first or second degree of the deceased victim, but could not reach a verdict on the charges of first degree murder or criminal attempt to commit first degree murder and a mistrial was declared as to those counts.  The court sentenced petitioner to 40 years in the department of corrections on the conspiracy to commit murder charge and four years on each accessory count, with each accessory count to run concurrent with one another but consecutive to the conspiracy count.

Petitioner appealed his convictions, raising the single issue that the trial court erroneously admitted the hearsay statement of D.T. that petitioner argued was not in furtherance of the conspiracy.  (ECF No. 10-2. App. Br. Mar. 31, 2006.)  The Colorado Court of Appeals affirmed. (ECF No. 10-3, *People v. Herrera*, 04CA0558 (Colo. App. May 24, 2007) (unpublished)).

Petitioner subsequently filed a pro se motion for post-conviction relief under Colo. R. Crim. P. 35(c).  (ECF No. 10-1, Case Activities Sheet at 19.)  The Colorado district court appointed counsel for petitioner and conducted several hearings on the motion.  (ECF No. 10-6, *People v. Herrera*, 12CA0312 (Colo. App. May 22, 2012) (unpublished), at 4.)  The district court denied petitioner's motion, (ECF No. 10-1, Case Activities Sheet at 14), the Colorado Court of Appeals affirmed that order, (ECF No. 10-6, *People v. Herrera*, 12CA0312 (Colo. App.

May 22, 2012) (unpublished)), and the Colorado Supreme Court denied certiorari.  (ECF No. 10-8, *Herrera v. People*, 2014SC503 (Colo. Supr. Ct. Dec. 22, 2014) (unpublished)).

Petitioner previously initiated two actions seeking habeas review under 28 U.S.C. §2254, both of which were dismissed without prejudice for failure to exhaust petitioner's state court remedies.  *Herrera v. Jones et al.*, 08-cv-01575-BNB, 2008 WL 4642216 (D. Colo. Oct. 8, 2008) (unpublished); *Herrera v. Jones et al.*, 08-cv-02761-CMA (D. Colo. May 25, 2011) (unpublished).  Petitioner filed the present habeas petition on January 20, 2015.  (ECF No. 1.) An order was entered by U.S. Magistrate Judge Gordon Gallagher on April 22, 2015 finding that petitioner's application was timely and that all claims had been exhausted at the state court. (ECF No. 21.)

Petitioner's current habeas petition raises two claims of error.  First, with respect to several issues omitted from his direct appeal, petitioner argues ineffective assistance of appellate counsel under *Strickland v. Washington*, 466 U.S. 668 (1984).  Specifically, petitioner claims that appellate counsel erred by failing to assert that petitioner's constitutional rights were violated because he never received notice that the prosecution would seek an aggravated sentence.  Petitioner also claims that appellate counsel erred by failing to challenge whether petitioner was denied his state and federal right to a speedy trial.  Finally, petitioner claims that appellate counsel erred by failing to challenge the admission of certain out-of-court statements made during trial under the Supreme Court's ruling in *Crawford v. Washington*, 541 U.S. 36 (2004).

Petitioner's second claim of error is that of prosecutorial misconduct.  Petitioner argues that during the grand jury proceedings, the prosecutor misrepresented that a shell cartridge recovered from the vehicle used in the victim's murder matched a gun owned by petitioner's

brother and obtained by petitioner just before its use in the murder.  Petitioner argues that the alleged prosecutorial misconduct undermined the grand jury's finding of probable cause.

## II.   LEGAL STANDARDS

### A.   *Pro Se* Status

The Court must construe the papers filed by petitioner liberally because he is not represented by an attorney.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Trackwell v. United States Gov't*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based."  *Hall*, 935 F.2d at 1110.  A court may not assume that a *pro se* applicant can prove facts that have not been alleged, or that a respondent has violated laws in ways that an applicant has not alleged.  *See Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).  The Court should not act as an advocate for a *pro se* applicant.  *See Hall*, 935 F.2d at 1110.  An applicant's *pro se* status does not entitle him to an application of different rules of civil procedure.  *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

### B.   28 U.S.C. § 2254

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court, unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Court reviews claims of legal error and mixed questions of law and fact pursuant to 28 U.S.C. § 2254(d)(1). *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003). The threshold question pursuant to § 2254(d)(1) is whether the petitioner seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final. *See Williams v. Taylor*, 529 U.S. 362, 390 (2000). Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Id*. at 412. Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*. Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).

If there is no clearly established federal law, that is the end of the inquiry pursuant to § 2254(d)(1). *See id*. at 1018. If a clearly established rule of federal law is implicated, the Court must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law. *See Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly established federal law if: (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases"; or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent." *Maynard* [*v. Boone*], 468 F.3d [665,] 669 [(10th Cir. 2006) ] (internal quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at 405). "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" *Williams*, 529 U.S. at 405 (citation omitted).
>
> A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts. *Id*. at 407-08. Additionally, we have recognized that an unreasonable application may occur if the state court either unreasonably extends, or unreasonably refuses to extend, a legal principle from Supreme Court precedent to a new context where it should apply.

*House,* 527 F.3d at 1018.

The Court's inquiry pursuant to the "unreasonable application" clause is an objective one. *See Williams*, 529 U.S. at 409-10. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Id.* at 411. "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard*, 468 F.3d at 671. In addition,

> evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations. It is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court.

*Harrington v. Richter*, 562 U.S. 86, 101 (2011) (internal quotation marks and citation omitted). The Court "must determine what arguments or theories supported or . . . could have supported the state court's decision" and then "ask whether it is possible fair minded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citation omitted). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Id.* (internal quotations marks and citation omitted).

Under this standard, "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Maynard*, 468 F.3d at 671. In other words,

> [a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal

6

court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement.

*Richter*, 131 S. Ct. at 786-87.

The Court reviews claims of factual errors pursuant to 28 U.S.C. § 2254(d)(2). *See Romano v. Gibson*, 278 F.3d 1145, 1154 n. 4 (10th Cir. 2002). Section 2254(d)(2) allows a court to grant a writ of habeas corpus only if the state court decision was based on an unreasonable determination of the facts in light of the evidence presented. Pursuant to § 2254(e)(1), the Court must presume that the state court's factual determinations are correct, *see Sumner v. Mata*, 455 U.S. 591, 592-93 (1982), and petitioner bears the burden of rebutting the presumption by clear and convincing evidence, *see Houchin v. Zavaras*, 107 F.3d 1465, 1470 (10th Cir. 1997). "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.'" *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

A claim, however, may be adjudicated on the merits in state court even in the absence of a statement of reasons by the state court for rejecting the claim. *Richter*, 131 S. Ct. at 784. ("[D]etermining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning.") (citations omitted). Furthermore, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id*. at 784-85. Even "[w]here a state court's decision is unaccompanied by an explanation, the habeas applicant's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Id*. at 784.

In other words, the Court "owe[s] deference to the state court's result, even if its reasoning is not expressly stated." *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999). Therefore, the Court "must uphold the state court's summary decision unless [the court's] independent review of the record and pertinent federal law persuades [it] that [the] result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Id*. at 1178. "[T]his 'independent review' should be distinguished from a full de novo review of the [petitioner's] claims." *Id*. Likewise, the Court applies the same deferential standard of review when a state court adjudicates a federal issue relying solely on a state standard that is at least as favorable to the petitioner as the federal standard. *See Harris v. Poppell*, 411 F.3d 1189, 1196 (10th Cir. 2005). If a claim was not adjudicated on the merits in state court, and if the claim also is not procedurally barred, the Court must review the claim *de novo* and the deferential standards of § 2254(d) do not apply. *See Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004).

## III.   ANALYSIS

### A. Ineffective Assistance of Appellate Counsel

The proper standard for assessing a claim of ineffectiveness of appellate counsel is that set forth in *Strickland*, 466 U.S. 668. To prevail under *Strickland*, Petitioner must show both that (1) his counsel's performance was deficient (*i.e.*, that "counsel's representation fell below an objective standard of reasonableness"), and (2) he was prejudiced by the deficient performance (*i.e.*, that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"). *Id.* at 688, 694.

When considering whether a claimant has established deficient performance, "[a] court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's

representation was within the 'wide range' of reasonable professional assistance." *Harrington*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 689).  "The challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* (quoting *Strickland*, 466 U.S. at 687).

When considering prejudice, "a challenger must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.* at 104 (quoting *Strickland*, 466 U.S. at 694).  "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding,'" but rather those errors "must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Id.* (quoting *Strickland*, 466 U.S. at 687).

When applying the *Strickland* standard in the context of an appellate counsel's actions, the reviewing court examines the merits of the omitted issue.  *Neill v. Gibson*, 278 F.3d 1044, 1057 (10th Cir. 2001); *Hooks v. Ward*, 184 F.3d 1206, 1221 (10th Cir. 1999).  "If the omitted issue is so plainly meritorious that it would have been unreasonable to winnow it out even from an otherwise strong appeal, its omission may directly establish deficient performance." *Malicoat v. Mullin*, 426 F.3d 1241, 1248-49 (10th Cir. 2005).  However,

> the Supreme Court has recognized that appellate counsel who filed a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal. Indeed, the winnowing out of weaker arguments so that counsel may focus the court's attention on those more likely to prevail is the hallmark of effective advocacy.

*Id.* at 1248-49 (internal citations and quotation marks omitted).

Further, as described above, this Court's review of petitioner's ineffective assistance of counsel claim is further constrained due to the fact that it has previously been reviewed—and

rejected—by the Colorado Court of Appeals. *See Ellis v. Hargett*, 302 F.3d 1182, 1187 (10th Cir. 2002). "As a federal habeas court we may reverse only if that holding was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" *Id.* (quoting 28 U.S.C. § 2254(d)(1) (2000) (defining standard of review of state-court decisions of law in habeas proceedings subject to Antiterrorism and Effective Death Penalty Act of 1996)). "The standards created by *Strickland* and §2254(d) are both highly deferential . . . and when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (internal citations and quotation marks omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

1. Aggravated Range Sentence

At sentencing, petitioner claims that he "was not notified on record in the courtroom, he was not notified by separate filing . . . and he was not notified of aggravation within [the] charging document" with regards to the prosecutor's intent to seek an enhanced sentence based on the fact that petitioner was on probation at the time the shooting took place. (ECF No. 38 at 10.) Petitioner further claims that the "substantive charge [under which he was indicted] did not expose him to aggravated sentencing." (*Id.*) (emphasis removed). As such, petitioner claims that his constitutional right to due process was violated because he was not given notice of his potential for an increased sentence prior to the sentencing hearing, and that his appellate counsel was therefore ineffective in failing to raise this issue on appeal.

In denying this claim in the appeal of petitioner's 35(c) motion for post-conviction relief, the Colorado Court of Appeals found that appellate counsel could not "have successfully argued that the trial court erred by imposing an aggravated range sentence in violation of *Apprendi*

because his prior conviction was not charged in the indictment." (ECF No. 10-6, *People v. Herrera*, 12CA0312 (Colo. App. May 22, 2012) (unpublished), at 15.) The Colorado Court of Appeals stated that "[b]ecause *Apprendi* preserves the rule in *Almendarez-Torres* . . . that prior convictions are sentencing factors and not elements of the offense and thus do not need to be charged in an indictment, the trial court properly considered defendant's prior felony conviction in sentencing him." (*Id.*)

In *Apprendi v. New Jersey*, the Supreme Court held that "*[o]ther than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proven beyond a reasonable doubt." 530 U.S. 466, 490 (2000) (emphasis added). The Supreme Court reaffirmed this holding in *Blakely v. Washington*, 542 U.S. 296, 301 (2004). In both of the foregoing decisions, and as acknowledged by the Tenth Circuit, the rule announced by the Supreme Court excludes "the fact of a prior conviction" from its requirement that all facts impacting the length of a defendant's prison sentence be found beyond a reasonable doubt by a jury. *Hunter v. Werholtz*, 505 F.3d 1080, 1082 (10th Cir. 2007); *see also Almendarez-Torres v. United States*, 523 U.S. 224, 243 (1998) ("[R]ecidivism . . . is a traditional, if not the most traditional basis for a sentencing court's increasing an offender's sentence.); *United States v. Booker*, 543 U.S. 220, 244 (2005) (holding that "[a]ny fact (*other than a prior conviction*) which is necessary to support a sentence exceeding the maximum authorized by a plea of guilty . . . must be admitted by the defendant or proved to a jury beyond a reasonable doubt") (emphasis added); *United States v. Moore*, 401 F.3d 1220, 1223-24 (10th Cir. 2005); *United States v. Delacruz-Soto*, 414 F.3d 1158, 1164 n.2 (10th Cir. 2005).

As announced by the Supreme Court in *Apprendi* and *Blakely*, and as acknowledged by the Tenth Circuit, the fact of petitioner's prior conviction was not of the type required to be stated in the charging document against petitioner, nor was it constitutionally required that petitioner be given notice of the aggravating effect of his prior conviction prior to sentencing. Applying the standard of review set forth in 28 U.S.C. § 2254(d), the Court finds that the Colorado court did not err in declining to grant petitioner's claim of ineffective assistance of appellate counsel on this ground.[1]

2. Speedy Trial

Petitioner next argues that his appellate counsel was ineffective in failing to appeal the issue of whether petitioner's trial was had outside of the speedy trial time limits set forth under Colorado statute.  The Colorado statute provides that

> (1) Except as otherwise provided in this section, if a defendant is not brought to trial on the issues raised by the complaint, information, or indictment within six months from the date of the entry of a plea of not guilty . . . the pending charges shall be dismissed, and the defendant shall not again be indicted, informed against, or committed for the same offense, or for another offense based upon the same act or series of acts arising out of the same criminal episode.
> . . . .
> (5.1) If a trial date is offered by the court to a defendant who is represented by counsel and neither the defendant nor his counsel expressly objects to the offered date as being beyond the time within which such trial shall be had pursuant to this section, then the period within which the trial shall be had is extended until such trial date and may be extended further pursuant to any other applicable provisions of this section.

§ 18-1-405, C.R.S. 2013.

---

[1] Petitioner's argument that his trial counsel was not entitled to stipulate on Petitioner's behalf that petitioner was on probation at the time of the offense has no merit.  Regardless of whether petitioner's trial counsel made such concession, this fact was independently verified to the trial court through the pre-sentencing report, "which reflected defendant's prior felony conviction and probationary sentence, and neither defendant nor defense counsel objected to the accuracy of" that report.  (ECF No. 10-6, *People v. Herrera*, 12CA0312 (Colo. App. May 22, 2012) (unpublished), at 14.)  Indeed, petitioner does not dispute in his habeas petition the fact that he was on probation for a prior felony conviction at the time of the offense for which he was convicted.

Petitioner's trial counsel testified at a hearing on petitioner's 35(c) motion that petitioner's trial had been set immediately after petitioner entered his not guilty plea.  (ECF No. 23, State Court Records, Hearing Transcript ("Tr.") Mar. 16, 2011, at 8-9.)  Subsequent to the plea hearing, counsel for petitioner and for the state went back to the trial judge's chambers agreed on a trial date together, off the record, with the assistance of the judge's clerk.  *Id.* Although petitioner was present for the plea hearing, petitioner was not present in chambers when the trial date was set, as petitioner was in custody at that time and had been taken by the court deputies back into holding when the trial date was being set.  (*Id.* at 9.)  At another hearing on the 35(c) motion, petitioner testified that his trial "was set outside the speedy trial without my consent"; that his attorneys had not advised him about waiving his right to a speedy trial nor had they told him that they needed to set the trial date more than six months after his arraignment in order to be ready for trial.  (ECF No. 23, State Court Records, Tr. Mar. 23, 2011, at 14.) Petitioner's trial commenced on November 17, 2003, more than one month after the six-month time period had passed from the time of his not guilty plea.

The Colorado Court of Appeals affirmed the denial of petitioner's 35(c) motion for post-conviction relief on this ground, finding that "[b]y its terms, the waiver provision of section 18-1-405(5.1) is applicable in every case unless the defense makes a speedy trial objection at the time a trial date is offered." (ECF No. 10-6 at 17-21.)  Relying upon that court's own prior case law, the Colorado Court of Appeals went on to posit that "[n]othing in the plain language of section 18-1-405(5.1) precludes an off-the-record trial setting . . . . [n]or does the section specify that the defendant or defense counsel must be physically present at the time the trial setting occurs."  *Id.* (citing *People v. Franco*, 74 P.3d 357, 359 (Colo. App. 2002)); *see also People v. Allen*, 885 P.2d 207, 211 n.7 (Colo. 1994) (en banc) (criminal defendant waived his right to

speedy trial under § 18-1-405(5.1) where court clerk had scheduled trial date with defense counsel by teleconference). Based on this premise, the court found that "it logically follows that defense counsel may set the trial date outside the speedy trial period in defendant's absence at an off-the-record trial setting pursuant to section 18-1-405(5.1)." (ECF No. 10-6, *People v. Herrera*, 12CA0312 (Colo. App. May 22, 2012) (unpublished), at 19.)

Although there is case law from the Colorado Court of Appeals addressing these issues, the Colorado Supreme Court has not explicitly ruled on whether Section 18-1-405(5.1) would impose the requirements that trial settings be on the record or that the defendant be present. As a federal court analyzing the contours of a Colorado state statute, this Court is bound to follow the "rule of law" announced and relied upon by the Colorado Court of Appeals "unless [it is] convinced by other persuasive data" that the Colorado Supreme Court would decide otherwise. *Hicks v. Feiock*, 485 U.S. 624, 630 n. 3 (1988). "This is the more so where, as in this case, the highest court has refused to review the lower court's decision rendered in one phase of the very litigation which is now prosecuted by the same parties before the federal court." *Id.* (quoting *West v. Am. Telephone & Telegraph Co.*, 311 U.S. 223, 237-38 (1940)); (ECF No. 10-8, *Herrera v. People*, 2014SC503 (Colo. Supr. Ct. Dec. 22, 2014) (denying petition for writ of certiorari en banc); *see also Taylor v. Phelan*, 9 F.3d 882, 887 (10th Cir. 1993) ("As a federal court, we are generally reticent to expand state law without clear guidance from [the state's] highest court . . . ."); *Rael v. Sullivan*, 918 F.2d 874, 876 (10th Cir. 1990) (State courts are the ultimate expositors of state law.).

Here, a plain reading of the statute would militate in favor of the interpretation that Section 18-1-405(5.1) does not have any requirement that the trial setting be made on the record or that the defendant be present when the setting is made. The Colorado Court of Appeals'

interpretation of the statute comports with this straight-forward reading. *Franco*, 74 P.3d at 358-59. Although the Colorado Supreme Court has not spoken directly on this issue, this Court concludes that, if faced with the same question, that court would reach the same conclusion. *Hicks*, 485 U.S. at 630 n. 3.

Indeed, the Colorado Supreme Court intimated as much in *People v. Allen*, where it found that a criminal defendant had waived his right to speedy trial under § 18-1-405(5.1) 885 P.2d at 211 n.7. In that case, the clerk of court had contacted defense counsel by phone to set the trial date. After the date had been set with defense counsel's knowledge and consent, "[i]t was not until the day of trial that Allen's attorney objected to the trial date on speedy-trial grounds." *Id*. Based on these facts, the Colorado Supreme Court found that "under § 18-1-405(5.1), Allen waived his ability to claim that his right to speedy trial had been violated." *Id*. Here, as in *Allen*, petitioner's defense counsel was present when trial was set and did not object at that time. Regardless of whether petitioner was present during the setting of the trial date, the fact that petitioner's counsel waited until the relevant time period had passed causes petitioner's claim of a violation of his speedy trial rights to be waived. *Id*.; § 18-1-405(5.1), C.R.S. 2013.

Further, looking at the facts in this case, it appears that Plaintiff did have ample notice that his trial was set to take place outside of the speedy trial time limits and chose not to timely object. Based on the undisputed facts as found by the Colorado Court of Appeals, petitioner "appeared in court for several pretrial hearings during which the trial date was mentioned, but neither defendant nor defense counsel made any speedy trial objection."[2] (ECF No. 10-6, *People v. Herrera*, 12CA0312 (Colo. App. May 22, 2012) (unpublished), at 19.) Clearly, petitioner did

---

[2] Although petitioner argues that he was ordered by the district court not to raise objections personally, but only through his counsel, the undisputed facts show that his counsel was present and able to raise the same objection on petitioner's behalf. Surely there was no such court order prohibiting Petitioner from instructing his counsel to do so.

have personal notice that his trial was set to occur outside of the speedy trial period entitled to him under § 18-1-405(5.1), yet neither he nor his counsel rose an objection to the trial setting until after that time had already passed.  Petitioner thus waived his rights to a speedy trial by the terms of that statute.

Because petitioner's claim that his speedy trial rights were violated would not have a reasonable chance of success on appeal, it was not folly that his appellate counsel chose not to raise it.  Applying the standard of review set forth in 28 U.S.C. § 2254(d), the Court finds that the Colorado court did not err in declining to grant petitioner's claim of ineffective assistance of appellate counsel on this ground.

### 3. Confrontation Clause[3]

Petitioner argues that his appellate counsel should have asserted that the trial court violated petitioner's confrontation right by admitting the out-of-court statements of D.T. and R.M.

In *Crawford*, the Supreme Court ruled that "testimonial" statements by a witness not present at trial may only be admitted if the witness (1) is unavailable and (2) was subject to cross-examination when the statement was made.  541 U.S. at 59.  This test was divined to satisfy the Confrontation Clause, which prohibits the admission of testimonial hearsay against a defendant except under certain circumstances.  *Id.* at 68-69.  The Tenth Circuit has "held that a testimonial statement is a statement that a reasonable person in the position of the declarant would objectively foresee might be used in the investigation or prosecution of a crime." *U.S. v. Yeley-Davis*, 632 F.3d 673, 679 (10th Cir. 2011) (internal citation and quotation omitted).  "An accuser who makes a formal statement to government officers bears testimony in a sense that a

---

[3] Respondents do not argue that *Crawford* would not apply retroactively to petitioner's appeal, and this Court finds that it does so apply under Colorado law.  *People v. Compan*, 100 P.3d 533, 537 (Colo. App. 2004), *aff'd*, 121 P.3d 876 (Colo. 2005).

person who makes a casual remark to an acquaintance does not." *Crawford*, 541 U.S. at 51. To

the extent that the statement would not be considered testimonial, the Supreme Court in *Davis v.*

*Washington*, 547 U.S. 813 (2006), "placed the question of the admissibility of nontestimonial

hearsay statements entirely outside the confines of the Confrontation Clause . . . ." *U.S. v.*

*Smalls*, 605 F.3d 765, 774 (10th Cir. 2010).

### a. *R.M.'s Statements*

The Colorado Court of Appeals analyzed petitioner's claim regarding R.M.'s statements

as follows:

> The police officer who interviewed R.M. at the hospital after the shooting testified
> that R.M. stated that he and the deceased victim were traveling in a red truck
> southbound on Academy Boulevard, approaching Palmer Park, where traffic had
> stopped; that as the truck stopped, R.M. heard several gunshots and "ducked
> down in the middle of the seat kind of ducking his head in under the dashboard
> and felt a pain in his left hand and then on his left side and then looked up and
> saw a dark green utility vehicle like a Toyota RAV4"; and that he saw three
> people inside the RAV4.

> The trial court found that the statements made by R.M. were nontestimonial, and
> therefore did not violate defendant's right to confrontation. The court further
> found that even if R.M.'s statements were improperly admitted, "their admission,
> considering all the evidence presented to the jury was, . . . harmless beyond a
> reasonable doubt."

> Although we disagree with the trial court that the statements were nontestimonial
> for *Crawford* purposes, we conclude that their admission was harmless beyond a
> reasonable doubt. *See People v. Couillard*, 131 P.3d 1146, 1153 (Colo. App.
> 2005).

> Violation of a defendant's confrontation rights is a constitutional error that
> requires reversal unless the appellate court determines that the error was harmless
> beyond a reasonable doubt. *Id.* The inquiry in a harmless error analysis is
> whether the guilty verdict actually rendered at trial was surely unattributable to
> the error. *Id.* Thus, a reviewing court must look at the trial as a whole and decide
> whether there is a reasonable probability that the defendant could have been
> prejudiced by the error. *Id.* If so, the error is not harmless and the conviction
> must be reversed. *Id.*

Factors to be considered in determining whether a confrontation violation constitutes harmless error include the importance of the evidence to the prosecution's case, whether the evidence was cumulative, the presence or absence of corroborating or contradictory testimony on the material points of the improperly admitted evidence, the extent of cross-examination otherwise permitted, and the overall strength of the prosecution's case. *Id.*

Applying those factors here, we conclude that admission of R.M.'s statements was harmless beyond a reasonable doubt.

R.M.'s statements were cumulative of, and corroborated by, admissible testimony from other witnesses. Specifically. witnesses other than R.M. provided testimony that identified the victims' red truck and its location on southbound Academy Boulevard near Palmer Park; that a green vehicle pulled up alongside the red truck at the traffic stop; that the assailants' vehicle was a green "4 x 4 type of vehicle" or a green Toyota RAV 4; that, at the traffic stop, someone fired gunshots into the victims' truck; that there were three people in the green RAV 4; that the three people were defendant and his cousins D.T. and A.S.; that defendant and D.T. both had guns; that, immediately after the shooting, the driver and passenger in the red truck had blood on them and the driver was "slumped over" and lying almost horizontally across toward the passenger-side door; and that a gun was recovered from the area by the victims' truck.

Because there was cumulative and corroborating testimony from witnesses other than R.M. and because there was substantial evidence establishing defendant's participation in the conspiracy and as an accessory, we conclude that admission of R.M.'s statements was harmless beyond a reasonable doubt. Because defendant would not have been able to successfully challenge the admissibility of R.M.'s statement under *Crawford* in the direct appeal, we conclude that appellate counsel's failure to raise the issue did not prejudice defendant.

(ECF No. 10-6, *People v. Herrera*, 12CA0312 (Colo. App. May 22, 2012) (unpublished), at 22-25.)

Like the Colorado Court of Appeals found, this Court concludes that the admission of the challenged statements were harmless beyond a reasonable doubt. Under Colorado law, which was properly applied by the Colorado Court of Appeals, the prosecution bears the burden of showing that the violation of a criminal defendant's right of confrontation is "harmless beyond a reasonable doubt." *People v. Harris*, 43 P.3d 221, 230 (Colo. 2002) (en banc) (quoting *Blecha v. People*, 962 P.2d 931, 942 (Colo. 1998)). "If there is a reasonable probability that [the

defendant] could have been prejudiced by the error, the error cannot be harmless." *Id.* (citing *Chapman v. California*, 386 U.S. 18, 23-24 (1967); *Blecha*, 962 P.2d at 942).   When evaluating whether an error of this type is harmless, Colorado law dictates that a court may consider various factors, "including the importance of the declarant's statement to the prosecution's case, whether the statement was cumulative, the presence or absence of corroborating or contradictory evidence on the material points of the witness's testimony, the extent of the cross-examination otherwise permitted, and the overall strength of the prosecution's case." *Id.* (citing *Merritt v. People*, 842 P.2d 162, 169 (Colo. 1992)).   "Further, a court must consider 'whether the guilty verdict actually rendered in this trial was surely unattributable to the error.'" *Id.* (quoting *Sullivan v. Louisiana*, 508 U.S. 275, 279 (1993)).

This Court's own review of the record reveals—as the Colorado Court of Appeals similarly found—that R.M.'s statements were cumulative of, and corroborated by, admissible testimony from other witnesses.   Specifically, at trial, testimony was properly admitted from witnesses other than R.M. that he and the deceased victim were traveling in a red truck on Southbound Academy Boulevard near Palmer Park (ECF No. 23, State Court Records, Tr. Nov. 19, 2003, at 228-33, Testimony of Joshua Warren, 246-50, Testimony of Larus Thomasson; Tr. Nov. 25, 2003, at 20-22, Testimony of Adrian Santos); that a green "4x4 type vehicle" or Toyota RAV4 pulled up alongside the red truck that R.M. and the deceased victim were driving (*Id.*, Tr. Nov. 19, 2003, at 250-56, Testimony of Larus Thomasson; Tr. Nov. 25, 2003, at 6-7, Testimony of Adrian Santos); that at the traffic stop, someone fired gunshots into the victims' truck (*Id.*, Tr. Nov. 19, 2003, at 239-42, Testimony of Alicia Leeper, at 252-53, Testimony of Larus Thomasson; Tr. Nov. 20, 2003, at 8-11, 14-15, Testimony of Richard Gysin); and that there were

three people inside the green RAV4 (*Id.*, Tr. Nov. 25, 2003, at pp. 18-19, 22-23, Testimony of Adrian Santos).[4]

Additionally, the Court's review of the record reveals that there was substantial evidence offered at trial establishing petitioner's participation in the conspiracy and as an accessory. As such, the Court finds, as did the Colorado Court of Appeals, that the admission of R.M.'s statements was harmless beyond a reasonable doubt. Likewise, the Colorado Court of Appeals did not err in finding that petitioner's appellate counsel was not ineffective by choosing not to raise this issue in his direct appeal.

### b. *D.T.'s Statements*

The Colorado Court of Appeals analyzed petitioner's claim regarding D.T.'s statements as follows:

> At trial, defendant's local gang leader, E.A., testified that after defendant's brother was shot, he saw D.T., defendant, and A.S. at a bar and that D.T. was wearing a coat that "came down to his knees." E.A. then related:
>
> [PROSECUTOR]: And did [D.T.] show you anything?
>
> [E.A.]: First he was talking and he said he was on a mission. And I said, "Are you going to go handle that?" He said, "Yeah, you know it." He showed me an SKS or an AK, some type of rifle.
>
> [PROSECUTOR]: And where did he have that?
>
> [E.A.]: In his jacket.
>
> Later, over defense counsel's objection, a police detective testified that R.D. said that D.T. told R.D. that D.T. had an AK-47 and that "his bullets hit" the deceased

---

[4] Petitioner attempts to rebut this evidence on the grounds that the testimony of Adrian Santos was "shaky" because he was a co-conspirator and testified in connection with a favorable plea agreement he had entered into with the government. (*See* ECF No. 38 at 30.) Even assuming credibility issues with respect to Mr. Santos, the result would not change as other witnesses provided redundant testimony establishing substantially the same facts, and those witnesses' credibility was not challenged by Petitioner. Although Santos was the only witness who testified to the identity of the persons in the RAV4, the various other witnesses who also testified to Petitioner's participation in the conspiracy would render this aspect of the disputed testimony harmless.

victim.   The officer also testified that R.D. reported that D.T. told R.D. that defendant "was also shooting."

Denying defendant's Crim. P. 35(c) motion requesting a new trial based on *Crawford*, the trial court found that D.T.'s statements were evidence of the conspiracy and therefore did not constitute a Confrontation Clause violation; and, alternatively, that defense counsel's examination of the police officer in defendant's "case-in-chief waived [defendant's] right to assert a Confrontation [Clause] violation when the prosecution elicited from the Detective on cross examination statements allegedly made by [D.T.]."

Like the trial court, we conclude that D.T's statements were nontestimonial. Notably, D.T.'s statements were not made in response to police interrogation, and a reasonable person in D.T.'s position would not make such incriminating statements if he believed they would later be used against him and his co-conspirators in the investigation or prosecution of the crimes.   *See People v. Villano*, 181 P.3d 1225, 1229 (Colo. App. 2008); *see also United States v. Townley*, 472 F.3d 1267, 1275 (10th Cir. 2007).   Indeed, the Supreme Court indicated that statements in furtherance of a conspiracy are, by their very nature, nontestimonial.  *Crawford*, 541 U.S. at 54-56.

We conclude that, even though some of D.T.'s statements were admitted through the testimony of a police officer, his statements were nontestimonial for *Crawford* purposes and that therefore the trial court did not err when it admitted the statements.  *See Villano*, 181 P.3d at 1229.  Because defendant would not have prevailed on this issue in the direct appeal, defendant has failed to demonstrate prejudice resulting from appellate counsel's failure to raise the issue.

(ECF No. 10-6, *People v. Herrera*, 12CA0312 (Colo. App. May 22, 2012) (unpublished), at 26-29.)

As for the statements of D.T. that were admitted through the testimony of E.A., these statements were not testimonial in nature and so no *Crawford* issue would arise as to that testimony.  *Crawford*, 541 U.S. at 68; *Townley*, 472 F.3d at 1275; *Villano*, 181 P.3d at 1229.

Regarding the statements elicited from the police investigator's testimony, the analysis differs as the police investigator's testimony contained double-hearsay.  Respondents argue that the Supreme Court has never ruled on whether statements that are non-testimonial become testimonial when they are hearsay within hearsay and are repeated in a testimonial setting.  (ECF

No. 32 at 28.)  However, the more relevant question is whether testimonial hearsay statements can become *non-testimonial* by virtue of the fact that those statements have embedded within them another layer of hearsay that are not of a testimonial nature.  Here, the statements of R.D. that were elicited through the testimony of a police detective were undoubtedly testimonial in that they were obtained when R.D. was being interrogated by the police.  *Crawford*, 541 U.S. at 68.  Regardless of whether the statements of D.T. would implicate *Crawford*, the Court must face the separate (albeit related) question of whether the admission of hearsay statements of R.D. would violate the rule in *Crawford*.

The Court finds that the trial court's admission of statements of R.D. through the police investigator—which contained the statements of D.T.—was not in conformity with *Crawford* and was error.  However, applying Colorado law, the Court concludes that any such error would be harmless beyond a reasonable doubt because those statements were cumulative of other properly admitted evidence, including the statements that were admitted through E.A.  E.A. testified that he saw petitioner and D.T. after a meeting to plan the shooting.  He testified that D.T. showed him an assault rifle and said he was going to handle it.  (ECF No. 23, State Court Records, Tr. Nov. 26, 2003, at 85-87, Testimony of Eric Amos.)  E.A. further testified that he spoke with petitioner after the shooting had taken place, whereupon petitioner related to him that "[w]e handled it. It got handled."  (*Id.* at 91-92.)  Much of the testimony from the police investigator containing D.T.'s statements was therefore duplicitous of properly admitted statements of D.T.  Although no other witness testified as to D.T.'s statement that petitioner was also shooting, this statement could not have impacted the jury's decision as they found petitioner guilty of only conspiracy and as an accessory and was unable to return verdicts on the charges of first degree murder or attempted first degree murder.

Additionally, as stated above, the Court's review of the record reveals that there was substantial evidence offered at trial establishing petitioner's participation in the conspiracy and as an accessory beyond the impermissible hearsay statements.  As such, the Court finds, as did the Colorado Court of Appeals, that the admission of D.T.'s statements was harmless beyond a reasonable doubt.  Likewise, the Colorado Court of Appeals did not err in finding that petitioner's appellate counsel was not ineffective by choosing not to raise this issue in his direct appeal.

The state court is entitled to deference in its own decision unless that decision is contrary to or an unreasonable application of clearly established federal law, and this Court finds that the state court's application of *Strickland* was sound in any event.  Likewise, even upon this its own independent review of the record, this Court reaches the same conclusion and finds that petitioner's appellate counsel was not ineffective pursuant to *Strickland*.  Petitioner's habeas application on this ground is thus denied.

### B. Prosecutorial Misconduct

Petitioner's second point of error maintains that the prosecution violated his right to due process at the grand jury proceedings by knowingly presenting perjured testimony.  Specifically, petitioner claims the prosecutor misled the grand jury by representing that a shell cartridge found in the green RAV4 matched the rifle listed on a purchase receipt signed by applicant's brother.

As an initial matter, the Court rejects respondent's argument that petitioner's claim is defaulted, pursuant to the independent and adequate state ground doctrine, because this claim was procedurally defaulted in the state court.  Not only did respondents already concede that "claim 2 appears to be exhausted" and therefore ripe for this Court's review on the merits, (ECF No. 10 at 14), but Magistrate Judge Gallagher also came to the same conclusion in his Order

Drawing Case on April 22, 2015. (ECF No. 21.) Although respondent argues that the law-of-the-case doctrine would not need to apply "when the decision was clearly erroneous and would work a manifest injustice," *Clark v. State Farm Mut. Auto Ins. Co.*, 590 F.3d 1134, 1140 (10th Cir. 2009), it makes no showing of how Magistrate Judge Gallagher's ruling was erroneous or "induced on a mistaken view of the law." *Health Sys. Agency of Okla, Inc. v. Norman*, 589 F.2d 486, 490 n.8 (10th Cir. 1978) (citations omitted). Likewise, this Court concludes that the Colorado Court of Appeals did in fact address petitioner's prosecutorial misconduct claim on the merits, and concluded that "[a]s the jury found defendant guilty beyond a reasonable doubt as a conspirator and as an accessory, the alleged impropriety is moot with respect to those claims." (ECF No. 10-6 at 29.)

However, even addressing petitioner's claim on its merits, the Court finds that it does not succeed. First, claims of deficiencies in state grand jury proceedings are not cognizable in a habeas corpus proceeding in federal court. *Lopez v. Riley*, 865 F.2d 30, 32 (2d Cir. 1989) (relying on *United States v. Mechanik*, 475 U.S. 66, 70 (1986): "If federal grand jury rights are not cognizable on direct appeal where rendered harmless by a petit jury, similar claims concerning a state grand jury proceeding are *a fortiori* foreclosed in a collateral attack brought in a federal court.").

Further, "[t]here is no Supreme Court precedent clearly establishing a constitutional rule that, irrespective of prosecutorial misconduct, an indictment must be dismissed because of perjured grand jury testimony where the perjurious testimony is not repeated before the petit jury which convicts." *Anderson v. Secretary for Dept. of Corrections*, 462 F.3d 1319, 1327 (11th Cir. 2006); *see also Goodrich v. Hall*, 448 F.3d 45, 49 (1st Cir. 2006) ("[T]he Supreme Court has not defined the circumstances in which impropriety involving even a federal grand jury can ever lead

he absolute

to dismissal of an indictment once a petit jury has returned a verdict of guilt.") (citing *Mechanik*,

475 U.S. at 73).  Where there is no clearly established federal law, the state court could not be

said to violate it, and "[t]he absence of clearly established federal law is dispositive under §

2254(d)(1)." *House*, 527 F.3d at 1018.  If there is no clearly established federal law, that is the

end of the inquiry pursuant to § 2254(d)(1).  *See id.* at 1018.  Petitioner has not pointed to, nor

has this Court found, any Supreme Court case law establishing a rule that an indictment must be

dismissed where it resulted from perjured testimony to the grand jury where that testimony was

not subsequently repeated to the petit jury that convicted the defendant beyond a reasonable

doubt.  As such, petitioner's claim fails under 42 U.S.C. § 2254(d)(1).

## IV.    CONCLUSION

Based on the foregoing, the Court:

(1)     DENIES petitioner's application for writ of habeas corpus (ECF No. 1);

(2)     DISMISSES the petition with PREJUDICE; and

(3)     pursuant to 28 U.S.C. § 2253(a), the Court having considered the standards of

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000), finds that petitioner has not made a substantial

showing of the denial of a constitutional right such that reasonable jurists could disagree as to the

disposition of his application.  28 U.S.C. § 2253(c)(2).  Accordingly, the Court also DENIES

issuing a certificate of appealability.

DATED this 30th day of November, 2015.

BY THE COURT:

RAYMOND P. MOORE
United States District Judge

25